# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**vs.**

**RYAN H. WOOD**

**Defendant.**

**CASE NO. 2:21-cr-165**

**JUDGE EDMUND A. SARGUS, JR.**

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S
## MOTION FOR LEAVE TO WITHDRAW GUILTY PLEA

On September 16, 2021, Defendant Ryan H. Wood pleaded guilty to two counts of failing to account for and pay over taxes to the IRS, just as he had promised he would do in a written plea agreement. Under oath, Wood admitted that he was guilty of the crimes and agreed that a written narrative of how he committed them was accurate. He and his defense counsel assured the Court that he had no medical issues that would prevent him from understanding the proceedings. Asked over and over by the Court whether he understood what he was doing and the consequences of pleading guilty, Wood consistently said he did. At one point—as the Court explained that his sentence could be higher than the sentencing guidelines recommended—the Court noticed that Wood appeared to be under stress and asked if he wanted to take a break. "No, keep going," Wood said, and the Court complied. Wood reaffirmed he was guilty, and the Court determined that he was making that statement of his own free will, with an understanding of what it meant. Now, months later, Wood claims to have decided that there are facts in his favor that may establish a defense and show that in fact he's not guilty. His motion asks the Court to permit him to withdraw his guilty plea.

The Court should deny the motion. The Sixth Circuit has made clear that withdrawal is for the defendant who makes a hasty, ill-considered decision to enter into a plea agreement, only to wake up soon after wondering what he was thinking. Wood is not such a defendant. Before pleading, he had months with counsel to weigh his options and make a decision. His plea, as even he has conceded, was free and voluntary. And once he had pleaded, he waited almost three months to seek withdrawal. After all that time, his case for withdrawal is little more than excuses for his criminal conduct and vague allegations that exculpatory evidence may exist. No fair and just reason justifies Wood's withdrawal of his plea agreement, and his motion should be denied.

## **BACKGROUND**

*Plea Agreement*

On June 22, 2021, the government held a "reverse" proffer with Wood and his current defense counsel, during which the government explained its theory of the case and provided Wood several documents, including tax records, bank records, a calculation of the total tax loss, and a copy of an IRS-CI Special Agent's report of a July 2020 interview with Wood. On July 1, 2021, the government sent defense counsel a plea agreement and bill of information charging Wood with two counts of failure to account for and pay over payroll taxes to the IRS for his company Wood and Sons Electric, LLC (WASE). The charges covered the second and third quarters of 2015. Defense counsel returned the plea agreement on August 23, with signatures by defense counsel and Wood dated August 22. The information and plea agreement were filed on August 25 as ECF numbers 2 and 3, respectively.

In the plea agreement, Wood agrees to "plead guilty to Counts 1 and 2 of the Information" and "admits that he is, in fact, guilty of these offenses." (ECF No. 3 at ¶ 1.) He agrees that he "will not withdraw or attempt to withdraw the plea." (*Id.*) Wood "agree[s] to the Statement of Facts set forth in Attachment A, and incorporate[s] it [into the plea agreement] by reference." (*Id.*

2

at ¶ 7.) The Statement of Facts unambiguously describes Wood's criminal conduct: he was responsible for collecting, accounting for, and paying over payroll taxes to the IRS for WASE; in 2014 and 2015, he withheld payroll taxes from employees' paychecks but did not account for or pay over these taxes to the IRS; and he did so willfully. (ECF No. 3-1.) Wood signed the Statement of Facts, confirming that he had "carefully reviewed it with [his] attorney" and that it was "true and accurate." (*Id.*)

Finally, Wood acknowledges "that he has read and understands this plea agreement; that he accepts this plea agreement knowingly and voluntarily . . .; that he has conferred with his attorney regarding this plea agreement and the facts and circumstances of his case, including the applicable law and potential defenses." (ECF No. 3 at ¶ 15.)

*Guilty Plea*

This Court held an arraignment on the information on September 16, 2021. Wood attended by video, consenting on the record to do so, (Trans., ECF No. 20, PageID 40), and during the hearing he was physically in the same room with defense counsel, (*id.* at 39). Wood was sworn in and stated his understanding that he was under oath. (*Id.* at 41.) In response to the Court's questions regarding competence, Wood provided the following information: he was 54 years old; he had attended two years of college; he had no physical or mental illness; and although he took two medications for his heart, albuterol and Altace, those medications did not prevent him from understanding the proceeding. (*Id.* at 41-42.)

Wood's counsel expressed no doubt as to his competence, noting, "[t]he only thing Mr. Wood has is a bunch of health issues concerning his heart and certain issues like that, but nothing mental." (*Id.* at 42.) The Court followed up: "And no medications that would impair his ability to understand these proceedings?" (*Id.*) "No," defense counsel responded. "All his medications,

3

Your Honor, I think all of them are in the pretrial bond report which would be heart medications and anti-seizure medications, Your Honor, but nothing psychedelic or anything like that." (*Id.*)

Having inquired into Wood's competence, the Court turned to the Information. Wood agreed that he had received a copy of the charging document and, in response to several explanations and questions from the Court, affirmed that he understood the right to indictment and the consequences of waiving it. (*Id.* at 42-43.) Defense counsel stated that he had explained to Wood the difference between an information and an indictment "on at least two different occasions before the information was filed and before [Wood] signed the plea, and also again this morning when signing a waiver of indictment." (*Id.* at 43-44.) Wood stated his wish to give up the right to indictment, and the Court found "that Mr. Wood has knowingly and competently exercised his right to waive the presentation of the facts of this case to the grand jury." (*Id.* at 44.) Defense counsel agreed to waive the reading of the Information: "There's no need for that. We have gone over that several times, Your Honor." (*Id.* at 44-45.)

Wood was then asked how he pleaded to the charges, and he responded, "Guilty." (*Id.* at 45.) Before accepting his plea, the Court explained to Wood, it had to be determined that "you understand these charges, that you're entering into the plea of guilty voluntarily, and that you understand all of the possible consequences that will follow." (*Id.*) With respect to defense counsel, Wood affirmed that he had told counsel everything he knew about the case, that counsel had all the information required to give proper legal advice, and that Wood was satisfied with counsel's advice and representation. (*Id.*) The Court then explained the elements of the offenses Wood was pleading to and the potential penalties. (*Id.* at 45-48.) Wood agreed that defense counsel had discussed with him how the sentencing guidelines would work in the case. (*Id.* at 48.)

Just after Wood acknowledged that his sentence could legally be higher than the sentencing guideline range, the Court paused to ask, "Mr. Wood, are you feeling all right?" (*Id.* at 49.) Wood answered, "No." (*Id.*) "Do you want to take a break or do you want to keep going?" the Court inquired. (*Id.*) "No, keep going," Wood replied. (*Id.*) The Court then stated, "We don't have too much left here, hopefully, but if you need a break, let me know. You look like you're in distress. We'll keep moving." (*Id.* at 49-50.) The Court then reviewed the rights Wood would give up by pleading guilty, and Wood acknowledged his understanding. (*See id.* at 50-51.)

The United States was then asked to summarize the substantive terms of the plea agreement. (*Id.* at 51.) The government noted that "the defendant agrees to plead guilty to Counts 1 and 2 of the information"; that "Paragraph 7 incorporates the statement of facts"; and "that the defendant has read and understands the agreement, accepts it knowingly and voluntarily and not as a result of any threats or promises other than the promises in the plea agreement, and that the defendant has conferred with counsel and is fully satisfied with defense counsel's assistance in the case." (*Id.* at 51-53.) Both defense counsel and Wood agreed that these statements fairly represented the agreement. (*Id.* at 53-54.) The Court explained at length the meaning of the agreement's appeal waiver. (*Id.* at 54-55.)

The Court then turned to the factual basis for the plea, explaining to Wood that "there has to be a presentation of the facts in the case before I can accept your plea." (*Id.* at 55.) Turning Wood's attention to the Statement of Facts attached to the plea agreement, the Court asked Wood to confirm that he had signed it, and Wood agreed that he had. (*Id.* at 55.) The Court then asked, "Again, I just want to be absolutely clear. Is everything in that statement correct?" (*Id.* at 56.) "Yes, sir," Wood replied. (*Id.*) Defense counsel then noted that Wood "had the agreement in front of him when he was acknowledging on the record that was his signature." (*Id.*)

Finally, the Court asked the question again, "is it still your intention to plead guilty to these charges?" (*Id.*) Wood responded, "Yes." With that, the Court concluded with the following findings:

> I have observed the appearance and the responsiveness of Mr. Ryan H. Wood in giving his answers to my questions.
> Based upon my observations of him and his answers given, I'm satisfied that he is fully competent and capable of entering an informed plea of guilty. He understands the elements of the offense, there's an independent basis in fact to support each of the elements. He also understands all of the possible consequences of pleading guilty, and he is aware of the other terms and conditions of the plea agreement.
> I conclude that his plea of guilty has been voluntarily made and that the plea agreement has been voluntarily and knowingly entered into.
> I accept his offered pleas of guilty to Counts 1 and 2. I also accept the terms and conditions of his plea agreement.

(*Id.*)

### *Motion to Withdraw Guilty Plea*

On December 7, 2021, eighty-two days after entering his guilty plea, Wood filed the Motion for Leave to Withdraw Guilty Plea. (ECF No. 17.) In the motion, Wood admits that "his plea via GoToMeeting was made freely and voluntarily, with no coercion, threats or promises." (*Id.* at ¶ 4.) But he goes on to note that he "was suffering from medical issues during the hearing and continues to suffer from serious medical issues." (*Id.*) He continues: "Defendant has had time to reflect on what occurred and what [his] actions were. In preparation with Defendant's Counsel for his [PSR], Defendant now believes that he has a good defense to Count[s] I and II, and wishes to withdraw his plea of guilty and go to trial on these charges." (*Id.* at ¶ 5.) Wood then notes several pieces of alleged evidence that he apparently believes amount to a defense to his admitted offenses, (*see id.* at ¶¶ 6-11), and he finishes with the assertion that "he is not guilty of the charges," (*id.* at ¶ 12).[1]

---

[1] On December 21, 2021, apparently acting pro se, Wood filed a Motion to Amend and Supplement Pleadings Under Federal Rule 15. (ECF No. 22.) It purports to delete certain

## **ARGUMENT**

I.      **No "Fair and Just Reason" Supports Withdrawal of the Guilty Plea.**

"A defendant has no right to withdraw his guilty plea, and he has the burden of showing 'a

fair and just reason for requesting the withdrawal.'" *United States v. Martin*, 668 F.3d 787, 794

(6th Cir. 2012) (quoting Fed. R. Crim. P. 11(d)(2)(B)). Ordinarily, a defendant will not be able to

make this showing: "[W]hen a defendant has entered a knowing and voluntary plea of guilty at a

hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty

plea should seldom arise." *United States v. Benton*, 639 F.3d 723, 727 (6th Cir. 2011) (quoting

*United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006)). To permit a defendant to withdraw a

guilty plea too easily "would degrade the otherwise serious act of pleading guilty into something

akin to a move in a game of chess." *United States v. Hyde*, 520 U.S. 670, 677 (1997); *see also*

*Ellis*, 470 F.3d at 280 ("The 'withdrawal of a guilty plea is inherently in derogation of the public

interest in finality and the orderly administration of justice.'" (quoting *United States v. Horne*,

987 F.2d 833, 837 (D.C. Cir. 1993))). "[W]ithdrawal of the plea is appropriate only where there is

a showing of 'real confusion or misunderstanding of the terms of the agreement.'" *United States*

*v. Collins*, 311 F. App'x 741, 743 (6th Cir. 2008) (quoting *Ellis*, 470 F.3d at 281).

There is no doubt that Wood entered and this Court accepted a guilty plea. (Trans., ECF

No. 20, PageID 56.) So Wood must establish that there is a "fair and just reason" under Rule

11(d)(2)(B) for this Court to grant his motion. To determine whether there is a "fair and just"

reason for a defendant to withdraw his plea, courts in this circuit consider the following factors:

---

allegations in his motion to withdraw—including his concession that the guilty plea was free and voluntary—and supplement them with new, contradictory allegations. Because Wood is still represented by counsel, the Court need not consider his pro se filing. *See United States v. Clark*, 250 F. Supp. 2d 856, 857 (S.D. Ohio 2002). Moreover, rather than address Wood's latest version of events, the government submits that the analysis below requires that his motion be denied notwithstanding the new allegations, which are generally inconsequential or belied by the record.

> (1) The amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded on other grounds by statute as stated in United States v. Caseslorente*, 220 F.3d 727 (6th Cir. 2000). The *Bashara* factors represent "a general, non-exclusive list and no one factor is controlling." *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996). Considering these factors, Wood cannot show a fair and just reason for the Court to grant his motion.

**a. Wood's 82-day delay in moving to withdraw his plea alone justifies denying the motion.**

"The strongest factor supporting the district court's denial of [defendant's] motion is the length of time between [defendant's] plea and the filing of his motion to withdraw." *United States v. Durham*, 178 F.3d 796, 798-99 (6th Cir. 1999) (delay of seventy-seven days); *see also United States v. Quinlan*, 473 F.3d 273, 277 (6th Cir 2007) (citing *Durham* and other cases in which shorter delays represented "the most significant factor in support of the district court's decision"). The aim of the withdrawal rule is "to allow a hastily entered plea made with unsure heart and confused mind to be undone." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991). "The shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time." *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007) (quoting *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996)). The Sixth Circuit "has declined to allow plea withdrawal when intervening time periods were as brief as one month." *Benton*, 639 F.3d at 727. When the delay exceeds a month, denials of motions to withdraw guilty pleas are

8

frequently upheld. *See, e.g.*, *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (thirty-five days); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (fifty-five days); *Baez*, 87 F.3d at 808 (sixty-seven days); *United States v. Jannuzzi*, 2009 WL 579331, at *3 (6th Cir. 2009) (finding a thirty-day period of delay to be "at the boundary line between what is acceptable and what is not").

Wood did not promptly seek to withdraw his guilty plea, as one would expect of a person who had "hastily" entered into the plea with "unsure heart and confused mind." Instead, he waited 82 days. Such a delay takes his case outside the purpose of the rule permitting withdrawal. Indeed, Wood's attempted withdrawal is precisely what the Sixth Circuit has explained the rule should ***not*** permit the defendant to do—"make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Alexander*, 948 F.2d at 1004 (quoting *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984)).

For this reason, the length of his delay "alone" justifies denying his motion. *See, e.g.*, *United States v. Giorgio*, 802 F.3d 845, 848 (6th Cir. 2015 ("We have held that . . . 75 days . . . is 'alone' enough to uphold the district court's denial of a motion to withdraw a guilty plea." (quoting *United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004))). At more than double the amount of time that the Sixth Circuit in *Jannuzzi* held to be "at the boundary line between what is acceptable and what is not," Wood's delay must weigh heavily against withdrawal.

**b. Wood cites no reason to explain the delay in filing his motion.**

The closest Wood comes to explaining why it took nearly three months to file his motion is to say that he "has had time to reflect on what occurred and what [his] actions were," and "[i]n preparation with Defendant's Counsel for his [PSR], [he] now believes that he has a good defense to Count[s] I and II." (ECF No. 17 at ¶ 5.) In his own words, then, the only reason Wood waited 82 days to file his motion is that until then he did not believe he had a defense to the charges to

which he had pleaded guilty. But simply reevaluating the known facts of the case and coming to a different strategic decision about how to proceed is not a valid justification for delay. *See Spencer*, 836 F.2d at 239 ("[W]here a defendant is aware of the condition or reason for a plea withdrawal, at the time the guilty plea is entered, a case for withdrawal is weaker.").

Wood had ample time before pleading guilty to "reflect on what occurred" and evaluate his defenses. Agents interviewed him in July 2020, putting him on notice over a year before his guilty plea that his handling of WASE's employment taxes in 2014 and 2015 was under investigation. Almost a year later, in June 2021, in a meeting with Wood and his attorneys, the government outlined its case against him, provided key evidence, and presented a plea agreement setting out the factual basis of the crimes and the consequences of a guilty plea. Only months later did he enter his guilty plea. And we need not speculate as to whether he had time to assess his defenses; he stated explicitly in his plea agreement that he had "conferred with his attorney regarding . . . the applicable law and ***potential defenses***." (ECF No. 3 at ¶ 15 (emphasis added).)

Whatever the reason for changing his mind—perhaps going through the PSR process made the prospect of punishment more real—Wood's strategic reassessment of his decision to plead guilty does not justify withdrawal or a delay in seeking withdrawal. *See, e.g.*, *Brady v. United States*, 397 U.S. 742, 757 (1970) (holding that a defendant "is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties"); *United States v. Wilson*, 351 F. App'x 94, 96 (6th Cir. 2009) (stating that a defendant's "buyer's remorse" and "belief that he made a poor strategic decision in pleading guilty" is "not a proper reason to permit withdrawal of a guilty plea").

This factor also weighs against permitting withdrawal.

    **c.** **Wood admitted his guilt under oath, and his belated assertion that he is "not guilty" falls short of a genuine assertion of innocence.**

In the third factor, courts look to whether the defendant "has consistently and vigorously maintained his innocence." *Dixon*, 479 F.3d at 437. "Statements of guilt under oath at a plea hearing support the district judge's decision not to permit withdrawal." *Martin*, 668 F.3d at 796. Indeed, the Sixth Circuit has stated in this context that a "defendant's post plea claims of innocence mock his courtroom declarations of guilt under oath." *United States v. Mise*, 27 F. App'x 408, 414 (6th Cir. 2001) (quoting the district court).

Wood signed a plea agreement "admit[ting] that he is, in fact, guilty" of Counts 1 and 2 of the Information, (ECF No. 3 at ¶ 2), and acknowledging that the Statement of Facts describing how he committed each element of those offenses is "true and correct," (ECF No. 3-1.) He went on to reaffirm those admissions under oath at his plea hearing. (ECF No. 20 at 55-56.) In the face of these unambiguous admissions, his belated claim to be "not guilty" must ring hollow. *See United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (stating that sworn testimony in a guilty-plea hearing "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made"). Without wading into the allegedly exculpatory facts Wood lists in his motion, the Court should conclude that this factor weighs against him.

But even addressing Wood's claims for the sake of argument, they still fall short of a vigorous assertion of innocence. Wood begins by claiming the IRS seized a computer of his that contains evidence that he paid or attempted to pay "some of the taxes." (Mot., ECF No. 17 at ¶ 6.) This of course contradicts his prior admission that he did not pay over a specified amount of WASE's taxes during the relevant period. (Statement of Facts, ECF No. 3-1.) (And to be clear,

11

the government is not aware of the evidence Wood alleges.) But even crediting Wood's about-face, the allegation that "some of the taxes" were paid is too vague to undercut his plea to failing to pay taxes in the second and third quarters of 2015. If he paid taxes in a different quarter, for instance, the alleged evidence would offer no defense. Ultimately, this amounts to at most an assertion of the possible existence of exculpatory evidence; it is not a claim of innocence.

Next, Wood claims to have "followed his accountant's advice." (ECF No. 17 at ¶ 7.) Again setting aside the government's disagreement with the factual premise, Wood's statement is simply too vague to be a claim of innocence. He identifies neither the accountant nor the advice, both of which would be necessary to assess the statement. Although this assertion does appear to acknowledge implicitly that Wood made the decisions about whether WASE would pay taxes over to the IRS—an element of the offense, (*see* Trans., ECF No. 20 at 46)—it is ultimately too vague and frankly implausible to receive serious consideration as an assertion of innocence.

Wood also states that "he did not get paid properly by the General Contracting Company for work that was set up and completed." (ECF No. 17 at ¶ 8.) This is not a defense but an excuse. Wood implies that committing the crimes wasn't his fault; if WASE had been paid what it was owed, he would have paid the taxes. But even if this were true, "an inability to pay taxes when due generally is not a defense." *United States v. Blanchard*, 618 F.3d 562, 572 (6th Cir. 2010); *see also Collins v. United States*, 848 F.2d 740, 741-42 (6th Cir. 1988). (stating, in the analogous context of the imposition of a civil penalty under 26 U.S.C. § 6672, that "[i]t is no excuse that, as a matter of sound business judgment, the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern—the government cannot be made an unwilling partner in a floundering business"). Any financial difficulties WASE had are not exculpatory.

12

Wood next asserts that the IRS told one of his sons that WASE was "exempt from owing any taxes in their first year of operation." (ECF No. 17 at ¶ 9.) Again, even taking Wood's assertion as true—despite its facial implausibility and the government's counterevidence—the assertion is irrelevant. As the Statement of Facts makes clear, WASE's first year of operation was 2013 or 2014—but the counts to which Wood pleaded guilty were for the 2015 tax year only. (*See* ECF No. 3-1.) So any representations that may have been made to WASE by the IRS about a prior tax year might be relevant to determining relevant conduct at sentencing, but they would have no impact on his guilt or innocence of the counts to which he pleaded. (Again, to be clear, the government is not aware that any such representations by the IRS occurred here.)

In his next allegation, Wood says that "[d]ue to his health issues and being taken to the hospital on numerous occasions for stroke like symptoms, Defendant was not able to participate in the financial aspect of the business as he was not in the proper mental state." (ECF No. 17 at ¶ 10.) The assertion that Wood did not participate in WASE's finances is flatly contradicted by the Statement of Facts and so deserves little credence. (*See* ECF No. 3-1 ("Defendant RYAN H. WOOD . . . was responsible for the financial matters and tax matters of WASE, including filing of employment tax returns and paying withholdings of employees to the IRS.").) Indeed, it's difficult to know what this assertion could mean when considered alongside Wood's claim to have followed his accountant's advice. At any rate, while there is little doubt that Wood has real health problems, the government cannot help but notice that Wood is now citing vague health issues both to exonerate himself from the crimes he admitted committing and also to cast doubt on his admission of those crimes several years later. In short, this claim appears to be an attempt to mitigate any mistakes he may have made in handling WASE's finances, not a claim to have been innocent of the offenses to which he pleaded guilty.

Finally, Wood appears to challenge the accuracy of an IRS-CI Special Agent's report of a July 2020 interview with Wood, a copy of which the government provided Wood in June 2021 during the "reverse" proffer. (*See* ECF No. 17 at ¶ 11.) But merely challenging the contents of the government's report does not of course amount to any kind of assertion of innocence.

Taken together, Wood's excuses and vague references to the potential existence of exculpatory evidence fall well short of claiming innocence. Because Wood has not "consistently and vigorously maintained his innocence," particularly in his unambiguous admissions of guilt in the plea agreement and at the plea hearing, this factor too weighs against him.

### d. The circumstances of Wood's guilty plea raise no doubts about its validity.

The circumstances underlying the entry of Wood's guilty plea weigh strongly against withdrawal. As an initial matter, Wood's was not the "hastily entered plea" that the rule permitting withdrawal aims to protect against. Well over a year before entering his plea, in July 2020, Wood learned through his interview with agents that they were investigating his handling of WASE's employment taxes during 2014 and 2015. In June of 2021, Wood and his current attorneys heard directly from the government the evidence against him, and they received an information and plea agreement spelling out the charges and the factual basis on July 1. On August 22, Wood signed the plea agreement, admitting guilt and affirming that he had "carefully reviewed" the factual basis with his attorney and that it was "true and correct." (ECF No. 3-1 at 12.) Nearly another month elapsed before the plea hearing. Wood had sufficient time with counsel to consider his conduct and possible defenses before signing the plea agreement and pleading guilty. *See Martin*, 668 F.3d at 796 (finding this factor "neutral" where the defendant "may have had only twelve minutes to review the agreement itself while at counsel table in open court").

As for the plea hearing itself, the transcript could hardly be clearer that Wood knew what he was doing and acted knowingly, voluntarily, and intelligently. The Court complied with

14

Federal Rule of Criminal Procedure 11, advising and questioning Wood about each of the required topics in Rule 11(b)(1). (*See* Trans., ECF No. 20, PageID 44-50, 54-55.) The Court inquired into Wood's competence, including his health and mental state at the time of the hearing, (*Id.* at 41-42); reviewed the nature of the charges, including the elements and penalties, (*id.* at 44-49); explained the constitutional rights being waived, (*id.* at 50); reviewed the plea agreement, (*id.* at 51-55); and ensured the existence of a factual basis to support the plea, (*id.* at 55-56). At every step, Wood confirmed his agreement and understanding, stating twice that he wished to plead guilty to the two counts of the Information. (*Id.* at 45, 56.) At no point did Wood express confusion, misunderstanding, or even hesitation. And at several points, defense counsel made comments revealing extensive communications between Wood and counsel prior to the hearing. (*See id.* at 43-44, 44-45.)

To his credit, Wood acknowledges in his motion that "his plea via GoToMeeting was made freely and voluntarily, with no coercion, threats or promises, and that Defendant admitted that he wished to plead guilty to Counts I and II." (ECF No. 17 at ¶ 4.) But despite this acknowledgement, in the same breath Wood hints that unspecified "medical issues" on the day of the hearing may call the plea into question. (*See id.* ("Defendant was suffering from medical issues during the hearing and continues to suffer from serious medical issues.").)

No medical issues vitiated Wood's plea. Just three days prior to the plea hearing, Wood was interviewed by Pretrial Services, and the Court can review the confidential Pretrial Services Report to determine whether at that time he identified any physical or mental problems that might inhibit his ability to comprehend and participate in the plea hearing. (*See* Pretrial Servs. Report at 3.) On the day of the hearing itself, Wood initially said he had no physical or mental illnesses. (Trans., ECF No. 20, PageID 41.) When pressed by the Court about medications, he stated that he

took two medications "for my heart." (*Id.*) The Court explained why it was asking—"I need to know if those medications prevent you from understanding what we're doing here today?"—and Wood answered, "No, sir." (*Id.* at 41-42.) Defense counsel agreed that Wood was competent, noting that Wood had "health issues concerning his heart and certain issues like that, but nothing mental," and that his medications were for his heart and to prevent seizures, "but nothing psychedelic or anything like that." (*Id.* at 42.) At one point during the hearing, when the Court perceived Wood to be "in distress," the Court paused to ask whether Wood was "feeling all right." (*Id.* at 49-50.) Wood said he was not, but when asked whether he wished to "take a break" or "keep going," he replied, "No, keep going." (*Id.*)

Wood's insinuations about the validity of his plea cannot stand in the face of the plea agreement and arraignment transcript, which demonstrate that he understood the proceedings and entered into his guilty plea knowingly, voluntarily, and intelligently. *See United States v. Hockenberry*, 730 F.3d 645, 662 (6th Cir. 2013) (Sargus, J.) (holding that defendant's claims of being "stressed, tired, and off his medication at the time of his guilty plea" did not suffice to "reflect that [defendant] lacked a general understanding and awareness of his circumstances at the time of his guilty plea").

### e. Wood's nature and background raise no concerns about the validity or fairness of his guilty plea.

In *Martin*, the Sixth Circuit found that a defendant's nature and background did "not suggest an inability to understand the proceedings" when the defendant completed some high school, spoke English, and "regularly affirmed his understanding of the proceedings" during his plea colloquy. 668 F.3d at 796.

Wood, who attended two years of college and has run his own business, unquestionably meets this low threshold. (*See, e.g.*, Trans., ECF No. 20, PageID 41.) Because Wood's nature and

16

background provide no reason to believe he could not understand the nature and seriousness of signing a plea agreement and entering a guilty plea, this factor too weighs against withdrawal.

> **f. Although Wood lacks significant prior experience with the criminal justice system, other evidence shows he understood the consequences of his plea.**

Although Wood lacks significant personal experience with the processes and consequences of entering a guilty plea, Wood's background prepared him to understand such matters, spelled out as they were in the plea agreement and at the plea hearing. At best, this factor is neutral for Wood. *Cf. Giorgio*, 802 F.3d at 849 (holding this factor weighed against a defendant where, "[a]lthough [defendant] did not have prior experience with the criminal-justice system, his background, time spent 'soul searching,' and comments about the plea suggest that he understood what he was doing" (record citation omitted)); *see also Quinlan*, 473 F.3d at 278 ("[W]hile [defendant] did not have any prior experience with the criminal justice system, his educational background suggests that he should have understood the consequences of the plea agreement.").

> **g. Potential prejudice to the government need not be shown.**

The Sixth Circuit has long held that "[t]he government is not required to establish prejudice that would result from a plea withdrawal, unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal." *Spencer*, 836 F.2d at 240. The United States submits that Wood has failed to advance such a reason and no showing of prejudice to the government is necessary.

> **h. The *Bashara* factors weigh strongly against granting plea withdrawal.**

With none of the factors weighing in Wood's favor, and at least five of them weighing against, his motion should be denied. Indeed, denial would be justified by the length of the delay alone. This is an entirely fair outcome. Before pleading guilty, Wood had more than a year's notice that his willful failure to file taxes was under investigation. For several of those months, he

17

had the assistance of counsel to review the facts of his case and potential defenses. His belated excuses and explanations cannot and should not overcome his multiple admissions of guilt.

## II.     If Wood Persists in Seeking Withdrawal, He Will No Longer Qualify for Acceptance of Responsibility at Sentencing.

A defendant "who enters a guilty plea is not entitled" to an acceptance-of-responsibility reduction "as a matter of right." U.S.S.G. § 3E1.1 app. n. 3. Such reductions are for a defendant who "clearly demonstrates acceptance of responsibility." *Id.* § 3E1.1(a). A defendant does this by "truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct." *Id.* § 3E1.1 app. n. 1(A).

At the time the plea agreement was signed, the United States conditionally supported a three-level reduction under § 3E1.1, "provided that the defendant's conduct continues to demonstrate compliance with the terms of § 3E1.1." (*See* ECF No. 3 at ¶ 7(b).) Elsewhere in the plea agreement, Wood agreed that he would "plead guilty" and "not withdraw or attempt to withdraw his plea." (*Id.* at ¶ 1.) Failure to keep up his end of the bargain, Wood acknowledged, would permit the United States to "institute any charges or sentencing recommendations that would otherwise be prohibited by this agreement." (*Id.* at ¶ 14.)

In his motion, Wood is no longer "truthfully admitting the conduct comprising the offense[s] of conviction," and he is "attempt[ing] to withdraw his plea." Such actions are in violation of the plea agreement and inconsistent with acceptance of responsibility. *See, e.g.*, *United States v. Williams*, 396 F. App'x 212, 219 (6th Cir. 2010). If Wood persists in his motion to withdraw, the United States intends to oppose a reduction to his offense level for acceptance of responsibility. Although Probation has not yet calculated Wood's guidelines range, the United States estimates that the loss of this reduction would likely increase Wood's guidelines range from 18-24 months to 27-33 months.

## CONCLUSION

For the foregoing reasons, the United States asks the Court to deny Wood's Motion for Leave to Withdraw Guilty Plea.

KENNETH L. PARKER
UNITED STATES ATTORNEY

s/ David J. Twombly
DAVID J. TWOMBLY (0092558)
Assistant United States Attorney
303 Marconi Blvd., Suite 200
Columbus, Ohio 43215
Phone No. (614) 469-5715
Fax No. (614) 469-5653
Email: David.Twombly@usdoj.gov

s/ Brenda S. Shoemaker
BRENDA S. SHOEMAKER (0041411)
Assistant United States Attorney
Email: Brenda.Shoemaker@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum in Opposition to Defendant's Motion for Leave to Withdraw Guilty Plea was electronically served this 21st day of December, 2021, on all counsel of record.

s/ David J. Twombly
DAVID J. TWOMBLY (0092558)
Assistant United States Attorney